UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| ERIC DAVID | CIVIL DOCKET NO. 2:25-CV-0703 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| ZACHARY ELLENDER, ET AL. | MAGISTRATE JUDGE THOMAS P. LEBLANC |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 12] filed by Defendants Zachary Ellender ("Officer Ellender") and the City of Lake Charles (collectively, "Defendants"). The Defendants seeks summary judgment with respect to all claims asserted by Plaintiff Eric David ("Plaintiff") on grounds that no violations of state or federal law occurred and that Officer Ellender is entitled to qualified immunity. Plaintiff filed an Opposition. [Doc. 16]. For the reasons that follow, the Defendants' Motion is DENIED.

## FACTUAL HISTORY

On April 21, 2025, at or just after sunset, Plaintiff was traveling on Interstate 10 in Calcasieu Parish when Officer Ellender, who was monitoring traffic, initiated a traffic stop after observing that Plaintiff's taillights were not illuminated. Bodycam footage captures the encounter and reflects the timing and sequence of events.[1] Plaintiff was wearing a work-related tee shirt and displayed a work-related lanyard and identification card around his neck. Upon request, Plaintiff produced his driver's

---

[1] All time stamps indicated herein are taken from the bodycam footage of Officer Ellender, attached as Exhibit "C" to the Plaintiff's opposition brief. [Doc.16-4].

license and proof of insurance.  Plaintiff initially struggled to pull up his insurance information on an app on his phone but ultimately found sufficient proof of insurance and showed it to Officer Ellender.  [0:04:38]; [Doc. 16-3, ¶ 8].  Officer Ellender informed Plaintiff that his taillights were not functioning.  [0:06:38]; [Doc. 16-3, ¶¶ 3-5].  Plaintiff expressed surprise and explained that a bag inside the vehicle likely bumped the light switch and turned the lights off.  [0:07:14].

At the timestamp of approximately 0:07:48 on the bodycam footage, Officer Ellender advised Plaintiff that he was not going to issue a citation and instead intended to issue a Notice of Violation ("NOV"), essentially a written warning.  [Doc. 16-3, ¶ 13].  At 0:09:29, Officer Ellender began writing the NOV.  While writing it, Officer Ellender questioned Plaintiff about where he worked and what he did for employment, which Plaintiff answered.  Shortly thereafter, another unit arrived on the scene and two additional police officers – including Senior Corporal Joshua Maddox – joined the group on the shoulder of the highway.  [0:13:00].  While still filling out the NOV, Officer Ellender asked Plaintiff whether there was anything in the vehicle "that's not supposed to be," including "hand grenades" or "dead bodies." [0:13:15].  Plaintiff shook his head no.  Officer Ellender then told the Plaintiff that he had been "visibly shaking" when initially stopped.  [0:13:33].  Plaintiff responded that he initially believed he was being stopped for speeding but looked down at his speed gauge and realized that he was not, hence his confusion as to why he was being pulled over.  [0:13:40].

At approximately 0:14:02, Officer Ellender requested consent to search the vehicle, which Plaintiff unequivocally declined.  Officer Ellender then stepped away

and stated in a lowered tone to Corporal Maddox that the Plaintiff denied being nervous, but reiterated his belief that Plaintiff was "shaking," "kind of loud," and "really animated." [0:14:26]. Corporal Maddox asked Officer Ellender if he wanted to "get a dog out here," and Officer Ellender responded, "if they have one." [0:14:31].

While waiting for the K-9 Unit to arrive, one of the officers began visually inspecting the exterior of the vehicle with a flashlight. [0:15:21]. During that time, Officer Ellender asked Plaintiff if he had ever been in any legal trouble, and Plaintiff responded that he had a felony theft conviction approximately 15-20 years earlier. He denied having a firearm in his vehicle, stating that, as a convicted felon, he could not lawfully possess one. [0:17:05]. Officer Ellender asked the Plaintiff if the reason for his nervousness when initially pulled over was because of his felony conviction, to which the Plaintiff responded, "no." Officer Ellender pressed the Plaintiff again, asking why he had appeared nervous when trying to locate his insurance information. Plaintiff again denied being nervous but explained that he could not understand why his insurance was showing up on the app as having expired in 2024 when he knew his policy was current. [0:18:05].

The K-9 Unit first appears on the bodycam video at approximately 0:25:10. The dog circled the vehicle and, according to the officers, alerted to the presence of narcotics. Although the alert itself is not clear on the video, at approximately 0:26:09, Plaintiff is shown being handcuffed, advised of his rights, and placed in the rear of Officer Ellender's patrol vehicle while officers searched the vehicle. Ultimately, no

illegal items were recovered.[2]  At approximately 0:42:21, Corporal Maddox and the other officer left the scene and Officer Ellender continued to search Plaintiff's vehicle. At 0:44:08, Officer Ellender explained to the Plaintiff that the other officers left the scene because they were responding to another call and Plaintiff's traffic stop was essentially over.  At 0:45:06, the Plaintiff can be heard asking off camera, "Can you get me out of these handcuffs please?"  Beginning at approximately 0:45:39 of the video, the Plaintiff can be heard saying, "You know this ain't right;" "You've still got me in cuffs;" and, moments later, "Why am I still in cuffs?"  Plaintiff remained handcuffed until approximately 0:46:59. Officer Ellender issued the NOV at approximately 0:47:43, Plaintiff signed it at approximately 0:49:33, and Plaintiff was released at 0:51:44, approximately 44 minutes after Officer Ellender first stated the Plaintiff would only receive an NOV.

## PROCEDURAL HISTORY

On May 22, 2025, Plaintiff filed suit against Officer Ellender, in his individual capacity, and the City of Lake Charles, alleging that Officer Ellender violated Plaintiff's rights under the Fourth Amendment through an unlawful seizure actionable under 42 U.S.C. § 1983, and asserting a Louisiana state-law claim for false imprisonment against both Defendants.  Plaintiff seeks damages, including punitive damages against Officer Ellender, as well as attorneys' fees and costs for the foregoing alleged violations.

---

[2]    Although a medication bottle was located on the passenger floorboard of the Plaintiff's vehicle, it was determined that the bottle contained the Plaintiff's prescription medication. [0:31:05]; [Doc. 16-3, ¶ 14].

On May 1, 2026, Defendants filed the instant Motion seeking judgment on all claims asserted by Plaintiff, contending that: (i) no constitutional violation occurred and that Officer Ellender is entitled to qualified immunity as to Plaintiff's § 1983 claim; and (ii) Officer Ellender is exempt under the Louisiana false imprisonment statute because he extended the traffic stop "upon his reasonable suspicion of additional criminal activity." [Doc. 12-1]. The City of Lake Charles neither separately addresses Plaintiff's false imprisonment claim against it nor identifies an independent basis for dismissal. Plaintiff opposed the Motion, [Doc. 16], which is fully briefed and ripe for ruling.

**LAW & ANALYSIS**

## I.    Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019), *citing Duffie v. United States*, 600 F. 3d 362, 371 (5th Cir. 2010). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017), *quoting Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

II.     **Section 1983 Claim**

A.      **Fourth Amendment Violation**

Plaintiff alleges that Officer Ellender violated the Fourth Amendment by unlawfully extending a traffic stop and thereby effectuating an unreasonable seizure. Officer Ellender moves for summary dismissal of this claim, arguing that no constitutional violation occurred and that he is entitled to qualified immunity.

Fourth Amendment protections attach "whenever a police officer accosts an individual and restrains his freedom to walk away." *Lincoln v. Turner*, 874 F.3d 833, 844 (5th Cir. 2017), *quoting Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  Warrantless searches and seizures are presumptively unreasonable unless they fall within a specifically recognized exception. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted).  A traffic stop constitutes a seizure under the Fourth Amendment and is analyzed under the framework established in *Terry*.[3]  *Terry* permits only "a very narrow exception" to the warrant requirement.  *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014), *citing United States v. Tookes,* 633 F.2d 712, 715 (5th Cir. 1980).

Under *Terry*, the Court evaluates the legality of a vehicle stop by asking two questions: (1) whether the stop was justified at its inception; and (2) whether the officer's subsequent actions remained reasonably related in scope to the circumstances justifying the stop. *United States v. Brigham*, 382 F.3d 500, 506 (5th

---

[3]      In accord with Supreme Court precedent, the Fifth Circuit treats routine traffic stops, whether justified by probable cause or reasonable suspicion, as *Terry* stops. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004).

Cir. 2004).  In the context of the first question, "[p]olice may detain an individual if the officer has a reasonable suspicion based on specific and particularized facts that the person is involved in criminal activity." *United States v. Massi*, 761 F.3d 512, 521 (5th Cir. 2014), *citing Terry*, 392 U.S. at 21-22, 27.  *See also United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).  During a lawful traffic stop, officers may request a driver's license; vehicle registration or rental papers and proof of insurance; run computer checks; and inquire into travel plans, all of which fall within the ordinary mission of the stop.  *Brigham*, 382 F.3d at 507-08; *United States v. Gonzalez,* 328 F.3d 755, 758-59 (5th Cir. 2003).  A stop becomes unlawful, however, if it is prolonged beyond the time reasonably required to complete its mission. *Rodriguez v. United States*, 575 U.S. 348, 350-51, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015) (internal quotation marks, brackets, and citation omitted).  *See also United States v. Lujan*, 2025 WL 673435, at *2 (5th Cir. Mar. 3, 2025), *cert. denied*, 146 S.Ct. 169, 223 L.Ed.2d 50 (2025) (unpublished).  Nevertheless, "[i]f the officer develops reasonable suspicion of [additional criminal] activity 'in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed.'" *United States v. Reyes*, 963 F.3d 482, 488-89 (5th Cir. 2020), *quoting United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010).

Here, the parties do not dispute that the initial stop was justified because the Plaintiff was operating a vehicle with non-functioning taillights.  Accordingly, the first *Terry* prong is satisfied, and the issue before the Court is whether Officer Ellender's conduct thereafter remained reasonably related to the purpose of the stop

or was justified by reasonable suspicion that arose during the encounter.[4] *See United States v. Rodriguez*, 802 F. App'x 90, 93 (5th Cir. 2020) (under *Terry*, "[i]f the stop was justified [at the outset], [a] court determines in the second step whether 'the officer's subsequent actions were reasonable.'").

Plaintiff does not challenge Officer Ellender's authority to request identification, insurance information, or otherwise conduct ordinary traffic-stop inquiries. Rather, Plaintiff contends that once he produced satisfactory proof of identity and insurance, the purpose of the stop had been completed and he should have been permitted to leave the scene. Officer Ellender responds that additional investigation was justified because Plaintiff appeared "nervous" at the outset of the stop, attempted twice to exit the vehicle after being instructed to remain inside, and struggled to locate proof of insurance. Specifically, after the Plaintiff denied a request to search his vehicle, Officer Ellender told Corporal Maddox that the Plaintiff had been "shaking," "kind of loud," and "really animated." [0:14:26]. According to Officer Ellender, those observations, viewed collectively, created reasonable suspicion of additional criminal activity and justified extending the detention beyond the original purpose of the stop.

---

[4]     The parties do not dispute that the Plaintiff was, in fact, seized. Because a "seizure" under the Fourth Amendment must be "justified at its inception," this Court first must determine when Plaintiff was "seized" for purposes of the Fourth Amendment. *Hill*, 752 F.3d at 1033, *citing Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). A seizure begins when "all the circumstances surrounding the incident" are such that "a reasonable person would have believed that he was not free to leave." *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (citation omitted); *United States v. Mask,* 330 F.3d 330, 336 (5th Cir. 2003). Here, the Plaintiff was seized when he was first pulled over for his malfunctioning taillights.

Review of Officer Ellender's bodycam video shows that Plaintiff appeared perplexed at being pulled over; exhibited apparently genuine surprise upon being told that his taillights were not on; and cooperated in producing his license and proof of insurance. When told that he had appeared nervous when looking for his proof of insurance, the Plaintiff explained that he was confused because, although his insurance app was indicating an expired policy, he knew he had paid his most recent premium.[5] Additionally, the Plaintiff patiently answered numerous questions from different officers about where he was traveling from and to, explained where he worked, and admitted to having a prior felony theft conviction. As to Officer Ellender's contention that Plaintiff was speaking loudly, Plaintiff notes that the encounter occurred on the shoulder of a heavily traveled section of Interstate 10, with traffic passing at highway speeds. Indeed, the bodycam footage reflects substantial ambient roadway noise, making it difficult to discern the volume and tone of everyone's speech.

When opposing parties tell two different stories and one version is "blatantly contradicted by the record, so that no reasonable jury could believe it," a court should not adopt that version for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Having viewed the audio and video recordings submitted by the parties, the Court finds that the video evidence does not contradict the Plaintiff's version of events "so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380.

---

[5]     The Plaintiff was so confused by what his insurance app indicated that he proceeded to show Officer Ellender his billing payment history in an effort to show that his insurance was current. Ultimately, Officer Ellender accepted the Plaintiff's proffer as satisfactory proof of insurance.

Indeed, at critical parts of the bodycam footage, the video supports Plaintiff's version of events.  Accordingly, the *Scott* rule is inapplicable, and the Court must apply the ordinary summary judgment standard, viewing the facts "in the light most favorable to the non-moving party" and drawing "all justifiable inferences in their favor." *Roundtree v. City of San Antonio, Texas*, 2022 WL 906405, at *7 (W.D. Tex. Mar. 28, 2022), *aff'd and remanded sub nom., Singleton v. Casanova*, 2024 WL 2891900 (5th Cir. June 10, 2024), *citing Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406, 410-11 (5th Cir. 2021).  Under this standard, and on the summary judgment record before it, the Court finds that Plaintiff's version of the facts is not contradicted by the audio and video evidence such that a reasonable jury would be unable to render a verdict in Plaintiffs' favor.  *Scott*, 550 U.S. at 380-81.  For this reason, the Court finds that genuine disputes of material fact surrounding the stop preclude dismissal of the Plaintiff's Section 1983 claim, and the question of whether a constitutional violation occurred is therefore a matter for the finder of fact to determine after weighing the evidence and the credibility of the witnesses.[6]  *Roundtree*, 2022 WL 906405 at *10.

---

[6]      Ultimately, of course, the determination of reasonable suspicion is a question of law. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 737 (5th Cir. 2000), *citing United States v. Silva,* 957 F.2d 157, 159 (5th Cir. 1992).  It is well-settled that "[t]he presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." *Goodson*, 202 F.3d at 736, *Silva,* 957 F.2d at 160.  And "[f]actors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers[.]" *United States v. Holloway,* 962 F.2d 451, 459 (5th Cir. 1992).  Here, the precise issue is whether the totality of the circumstances surrounding the stop sufficiently gave rise to a reasonable suspicion of additional criminal activity and justified extending the detention beyond the original purpose of the stop.  But facts critical to this determination are in dispute and must be decided by a jury after both judging the credibility of the witnesses and independently reviewing the bodycam video. *Goodson*, 202 F.3d at 737.

### B.      Qualified Immunity

Having been sued in his individual capacity, Officer Ellender pleads the defense of qualified immunity, which shields government officials performing discretionary functions from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The threshold question in this analysis is whether the facts alleged show that the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  While qualified immunity "ordinarily should be decided by the court long before trial," if the issue is not decided until trial, the defense is not waived but goes to the jury, which "must determine the objective legal reasonableness of [the] officer's conduct by construing the facts in dispute."  *Snyder v. Trepagnier*, 142 F.3d 791, 799-800 (5th Cir. 1998), *citing Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991), *Melear v. Spears,* 862 F.2d 1177, 1184 (5th Cir. 1989) (footnote omitted).  Thus, "if ... there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question."  *Presley v. City of Benbrook,* 4 F.3d 405, 410 (5th Cir. 1993).

Here, the Court cannot resolve qualified immunity at the summary judgment stage because the immunity inquiry turns on disputed historical facts – namely, whether Plaintiff exhibited the "nervous," "agitated," or "erratic" behavior that Officer Ellender claims justified prolonging the stop.  *See Goodson*, 202 F.3d at 739 (the same disputed facts that were critical to the issue of reasonable suspicion were

also critical to the issue of objective reasonableness under qualified immunity analysis). Viewing the evidence in Plaintiff's favor, a reasonable jury could reject Officer Ellender's characterization of Plaintiff's demeanor and his alleged justification for extending the traffic stop. Thus, because these factual disputes are material to the issue of whether Officer Ellender's conduct was objectively reasonable, summary judgment on qualified immunity is inappropriate at this stage, and this issue must also be determined by a jury.

## III.    False Imprisonment Claim

Under Louisiana law, the tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. *Herrera v. First Nat'l. Ins. Co. of Am.*, 194 So.3d 807, 813 (La. App. 1st Cir. 6/3/16), *writ denied sub nom., Herrera v. First Nat'l Ins. Co. of Am.*, 208 So.3d 885 (La. 10/28/16), *citing Brown v. Rougon,* 552 So.2d 1052, 1055 (La. App. 1st Cir. 1989), *writ denied,* 559 So.2d 121 (La. 1990). Unlawful detention is restraint without color of legal authority. *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009), *citing Kyle v. City of New Orleans,* 353 So.2d 969, 971 (La. 1977). Thus, if an arrest is made either without any legal process or warrant, or under a warrant void and null upon its face, a false imprisonment has occurred. *OConner v. Hammond Police Department,* 439 So.2d 558, 560 (La. App. 1st Cir. 1983). However, if a person is arrested pursuant to statutory authority, there is no liability for damages for false imprisonment. *Kyle,* 353 So.2d at 971. The burden is on a plaintiff to prove that the arrest was made without color of legal authority. *Cerna v. Rhodes,* 341 So.2d 1157, 1160 (La. App. 1st Cir. 1976), *writ denied,* 343 So.2d 1067 (La.1977).

Although Plaintiff's false imprisonment claim is distinct from his Section 1983 unlawful seizure claim, both require the Court to determine whether Officer Ellender's continued detention of Plaintiff was lawful.  Because false imprisonment under Louisiana law requires proof of unlawful detention, the Court first evaluates the continued detention under the Fourth Amendment.  If the detention complied with *Terry* and *Rodriguez*, Plaintiff cannot establish false imprisonment; if not, the Court then considers whether any state law defense nevertheless bars recovery.  *See, e.g., Kyle*, 353 So.2d at 971 ("False … imprisonment … is restraint without color of legal authority."); *Johnson v. Thibodaux City*, 887 F.3d 726, 733-36 (5th Cir. 2018) (analyzing whether an investigative detention became unlawfully prolonged under the Fourth Amendment and emphasizing that detention beyond the purpose of the stop requires constitutional justification); and *Rodriguez*, 575 U.S. at 354-57 (a seizure justified only by the traffic mission becomes unlawful if prolonged beyond the time reasonably required).  Here, Officer Ellender invokes the discretionary function defense available to police officers and codified at La. Rev. Stat. § 9:2793.11.  Officer Ellender argues that because he was exercising his discretion and judgment at the time he extended the Plaintiff's traffic stop, he is entitled to immunity under this statute.[7]

---

[7]    Louisiana Revised Statute § 9:2793.11(B) provides:

B. A civil claim for damages against a peace officer or public entity that employs or appoints a peace officer shall be prohibited in any of the following circumstances:

(1) The conduct or actions of the peace officer arise out of the performance of any discretionary function within the course and scope of the peace officer's law enforcement duties.

As with the Plaintiff's Section 1983 claim, examination of the false imprisonment factors depends on resolution of material disputed facts concerning the circumstances supporting the Plaintiff's continued detention and whether reasonable suspicion existed to prolong the stop.  For this reason, the question of whether a tort was committed and whether Officer Ellender is immune from liability hinges on disputed facts which cannot be resolved by the Court at this stage.  Accordingly, Plaintiff's state law false imprisonment claim, as well as Officer Ellender's statutory discretionary function defense, must be presented to a jury.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the MOTION FOR SUMMARY JUDGMENT [Doc. 12] filed by Zachary Ellender and the City of Lake Charles is DENIED.

THUS, DONE AND SIGNED in Chambers on this 26th day of June 2026.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

La. Rev. Stat. § 9:2793.11(B)(1) (West 20224). "Discretionary function" is defined as "any action or conduct of a peace officer, acting within the course and scope of his law enforcement duties, that includes exercising judgment in the enforcement of the criminal laws of the state including but not limited to arresting or attempting to arrest persons or carrying out any other duties or obligations imposed upon a peace officer in this state. La. Rev. Stat. § 9:2793.11 (A)(1) (West 2024).